IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES BARTON,<br><br>    Plaintiff,<br><br>  vs.<br><br>TAGGART BOYD, Warden of RTC; MICHELE WILHOLM, Warden of NSP; CASE MANAGER HASSAN, Case Manager of NSP; HOUSING UNIT 3 CLASSY, Unit Manager of NSP; B. NIEMAN, Disciplinary Committee; CPL. ESCHLIMAN, Disciplinary Committee; SAXTON ALEX, Cpl.; RICHARD WHITE; J. YOUNG; STOUT, Cpl.; HABTU, SGT; DUSTIN BOWERS; BUKOVNIK; SANDRO; AL-AMIRI, Corpal, NSP; RTC CORPORAL MILLER; JENSEN; COBORN; and CRUZ;<br><br>    Defendants. | **8:24CV180**<br><br>**MEMORANDUM AND ORDER** |

  This matter is before the Court on Plaintiff James Barton's Complaint filed on May 16, 2024. Filing No. 1. Plaintiff is currently incarcerated at the Reception and Treatment Center (RTC) of the Nebraska Department of Correctional Services (NDCS). Plaintiff was incarcerated at the Nebraska State Penitentiary (NSP) beginning on March 20, 2023. Filing No. 1 at 4. He was moved to RTC on March 11, 2024. Filing No. 4 at 1, 7. Plaintiff alleges constitutional violations occurred at both facilities.

The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b).[1]

## I. SUMMARY OF COMPLAINT

Plaintiff has sued RTC Warden Taggart Boyd; NSP Warden Michele Wilholm; NSP Case Manager Hassan; Classy, the NSP Unit Manager for Housing Unit 3; B. Nieman and Corporal Eschliman, who served on a Disciplinary Committee; Corporal Saxton Alex;[2] Richard White; J. Young; Corporal Stout; Sergeant Habtu; Dustin Bowers; Bukovnik; Sandro;[3] NSP Corporal Al-Amiri; RTC Corporal Miller; Jensen; Coborn; and Cruz. Plaintiff alleges the following as his "Statement of Claim":

On October 26, 2023, while housed at NSP, Plaintiff submitted an Inmate Interview Request, stating he had bipolar depression and was confused. He complained of receiving misconduct reports for minor violations and conduct he did not do, being placed in holding for two days after complaining that he received the wrong medication, and being laughed at by a case manager when he said his brother died. In response, Plaintiff was reminded that his prior reported misconduct included refusing searches, disobeying orders, and using abusive language, and this conduct, like all misconduct, is not considered minor. Plaintiff was encouraged to seek out mental health care, Filing No. 7 at 1, and he did so on December 18, 2023, Filing No. 7 at 6.

---

[1] Plaintiff has filed five supplements to the initial complaint, Filing Nos. 4-8, all of which were also considered by the Court for this initial review.
[2] Plaintiff names Saxton Alex as a defendant. The correct name is Alec Saxton, and "Saxton" will be used in this Memorandum and Order to discuss this defendant's alleged actions.
[3] While Plaintiff named Bukovnik and Sandro as separate defendants, these names reference only one person, "Sandro Bukovnik." Filing No. 6 at 7. The Court will not mention Sandro as a separate defendant in this Memorandum and Order.

2

As Plaintiff was leaving his housing unit on January 1, 2024, Bowers attempted to stop him. Filing No. 6 at 2. Bowers called for assistance, and Young and Stout responded. During the incident, Young allegedly said, "I don't walk with you. You walk with me boy," a statement Plaintiff interpreted as racist. Filing No. 1 at 4. Plaintiff claims that although he complied with the officers' demands, they slammed him to the ground, dragged him, jumped on his back, grabbed him below the waist, bent his legs at the knees, and shackled his ankles. Filing No. 1 at 4; Filing No. 5 at 1; Filing No. 7 at 7. He was confined in a dry cell for four hours and then released into the general population. Filing No. 1 at 5.

Plaintiff was charged with disciplinary misconduct based on the January 1, 2024, incident. A hearing was held on January 5, 2024. Plaintiff attended the hearing and was found guilty. Filing No. 6 at 1-2, 11.

Plaintiff claims that since his incarceration, eight of his family members have died. On January 4, 2024, Plaintiff submitted an informal grievance claiming that when he told his unit manager that his younger brother died, the unit manager ignored him and laughed. Plaintiff felt depressed, hopeless, sad, and traumatized, and he needed to speak with his family. Filing No. 5 at 6.

On January 8, 2024, Plaintiff was transported to the hospital due to complaints of chest pain, shortness of breath, headaches, dizziness, and confusion. Filing No. 5 at 1. He was diagnosed with a minor concussion due to the January 1 incident, sinus bradycardia from a pre-existing condition, and unspecified chest pain. Filing No. 1 at 4; Filing No. 5 at 1-4. Plaintiff requested mental health care on January 10, 2024. Filing No. 7 at 9.

Plaintiff claims NSP officers lied in misconduct reports and, as a result, Plaintiff's prison life became progressively more restrictive. Saxton reported misconduct by Plaintiff occurring on January 20, 2024. A hearing was held,

and Plaintiff was found guilty. Filing No. 6 at 3-4, 13. Bukovnik reported misconduct by Plaintiff on February 1, 2024, and White reported misconduct by Plaintiff on March 6, 2024. Filing No. 6 at 5-8.[4] Although assigned a minimum-security classification when he was initially incarcerated, after accumulating several misconduct charges, Plaintiff was placed in maximum security housing. Filing No. 1 at 5. He lost three years of good time, and unit managers have refused passes to attend religious services and stopped or delayed his participation in college classes. Filing No. 1 at 5; Filing No. 7 at 2-3.

Plaintiff alleges Classy laughed when he mentioned a family member died and, as a result, he became very depressed. After attempting suicide, Plaintiff was transferred to RTC on March 11, 2024. Filing No. 1 at 6; Filing No. 4 at 1.

Plaintiff claims that following his arrival at RTC, he was given the wrong medication, harassed, teased, and discriminated against for being Sudanese. Plaintiff claims Cruz limited his access to free time and showers, and harassed him; Grant, Jensen, Colburn, and Cruz antagonized him and withheld all or part of his meals; and Jensen, Miller, and Anderson harassed him in the shower. He claims he lives in fear of another altercation with the officers. Filing No. 4 at 4, 6-7. Plaintiff alleges he was deprived of personal property, including hygiene products, Filing No. 4 at 4, and by late April 2024, he was unable to eat and began urinating and defecating on himself. Filing No. 1 at 6.

On April 24, 2024, Plaintiff requested the return of his property, an emergency visit with his sister, legal papers for his tort claim, and a book with a listing of lawyers. He was asked to provide more information to justify the emergency visit request, and told that the legal form to file a lawsuit was

---

[4] The outcome of the Bukovnik and White misconduct reports is not referenced in the record.

available in his unit and a book listing lawyers could be reviewed in the library. Filing No. 8 at 3-5. On April 24, 2024, Plaintiff also requested return to the general population. He was told his request would be reviewed when Plaintiff was cleared by mental health. Filing No. 8 at 6. On April 28, 2024, he requested a housing reclassification so he could get a job. The request was denied because his next reclassification review was scheduled for November 2024. Filing No. 8 at 2. Between April 24 and April 29, 2024, Plaintiff submitted several inmate interview requests. He claimed he was losing weight and needed a special diet, he was in chronic pain, and he was having emotional difficulty adjusting to the people in his unit and the circumstances of his life. He was scheduled to see a nurse for his physical health concerns, and he was offered mental health care to develop coping skills. Filing No. 8 at 6-9.

Boyd granted Plaintiff's request for access to the law library on May 3, 2024. Filing No. 4 at 3.

Plaintiff's supplemental court filing dated May 11, 2024, states he was injected with an unknown substance, and personnel at RTC tried to convince him to dismiss this lawsuit, stating he is crazy. Plaintiff alleges he is traumatized and wants to be released from RTC. Filing No. 4 at 1.

Plaintiff requests damages for violating his constitutional rights, including his right to equal protection. Filing No. 1 at 2. He further requests an order requiring the employment termination or forced resignation of state officials. Filing No. 1 at 3.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis and prisoner complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e); 28 U.S.C. § 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a

claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION

Plaintiff seeks recovery under 42 U.S.C. § 1983. To recover under 42 U.S.C. § 1983, Plaintiff must show "the conduct complained of was committed

by a person acting under color of state law," and this conduct deprived him of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999).

Plaintiff has not indicated whether he is suing the defendants in their official or individual capacities. If the complaint does not clearly specify whether a defendant is sued in an official or individual capacity, the Court applies the "course of proceedings" test: The fundamental question is whether the course of proceedings puts defendants on notice that they are being sued in their individual capacity and that their personal liability is at stake. *S.A.A. v. Geisler*, 127 F.4th 1133, 1139 (8th Cir. 2025). The inquiry is whether the plaintiff's intention to hold a defendant personally liable can be fairly ascertained by reading the complaint. *Id.*

Here, Plaintiff's complaint requests relief—employment termination or forced resignation—that necessarily implicates the defendants in their individual capacities. Because the complaint seeks relief not available from the defendants in their official capacities, it suggests an intent to sue them in their individual capacities. *Cf. id.* at 1139-40 (considerations include whether the requested relief is not available from official capacity defendants). Accordingly, the Court understands the complaint to name the defendants in both their official and individual capacities.

### A. Employee Termination Demand

Plaintiff asks the court to order the termination or forced resignation of the defendants. That request must be denied: Federal courts do not sit as "super-personnel departments" that order employers to either fire or force the resignation of specific employees for their alleged misconduct.

### B. Official Capacity Claims

The defendants are employees of the State of Nebraska. A lawsuit against a public employee in his or her official capacity is a suit against the public employer. *Campbell v. State of Iowa, Third Jud. Dist. Dept. of Corr. Servs.*, 702 F.3d 1140, 1141 (8th Cir. 2013) (quoting *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir.1999)). So, Plaintiff's claims against the defendants, in their official capacities, are claims against the State of Nebraska.

States or governmental entities that are considered arms of the state are not suable "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). Suits for money damages against the state or its agencies are barred by the Eleventh Amendment. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (holding the Eleventh Amendment bars suit against a state agency for any kind of relief); *Nix v. Norman*, 879 F.2d 429, 431-32 (8th Cir. 1989) (holding a suit brought solely against a state or state agency is proscribed by the Eleventh Amendment). And the Eleventh Amendment bars claims for damages by private parties against state employees sued in their official capacities. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995); *Novascone v. Nebraska Dep't of Corr. Servs.*, No. 8:19CV201, 2019 WL 6307565, at *2 (D. Neb. Nov. 25, 2019) (dismissing § 1983 suit for money damages against the NDCS director, in his official capacity, under Eleventh Amendment); *Reising v. Lewien*, No. 8:18CV352, 2019 WL 1585142, at *3 (D. Neb. Apr. 12, 2019) (holding § 1983 suit for money damages against unit administrator of CCC and OCC warden, in their official capacities, was barred by the Eleventh Amendment).

Therefore, Plaintiff's claims against the defendants, in their official capacities, seeking an award of damages must be dismissed as barred by the Eleventh Amendment.

## C. Individual Capacity Claims

### 1. Warden Boyd and Warden Wilholm

Wilholm is not mentioned in Plaintiff's filings. Boyd is mentioned only once: He granted Plaintiff's request to visit the law library. Very liberally construed, Plaintiff may be alleging Wilholm and Boyd, in their supervisory roles, are responsible for the conduct of all employees in their chain of command. However, "[i]t is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre,* 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). To state a § 1983 claim, a plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). Supervisors can incur liability only for their personal involvement in a constitutional violation, or when their collective inaction amounts to deliberate indifference to or tacit authorization of violative practices. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)). Plaintiff's complaint contains no allegations of such conduct by Wilholm and Boyd, and his claims against these defendants must be dismissed. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) (holding "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement").

### 2. Hassan, Habtu, and Al-Amiri

Plaintiff has named correctional officers Hassan, Habtu, and Al-Amiri as defendants, but they are not otherwise mentioned in his filings. Since no

allegations have been made against them, Plaintiff's claims against Hassan, Habtu, and Al-Amiri, in their individual capacities, must be dismissed.

### 3. Involuntary Medication

Plaintiff alleges he was injected with an unknown substance, but he does not allege that any of the named defendants were responsible for this conduct. The claim must therefore be dismissed.

### 4. Misconduct Reports and Consequences

Plaintiff claims his housing was progressively restricted and he lost three years of good time credit due to repeated misconduct reports. He claims the misconduct described in these reports either did not happen or was so minor that a report was unjustified.

#### i. Nieman and Eschliman

Nieman chaired the Disciplinary Committee which considered the January 1 and January 20, 2024, misconduct reports against Plaintiff, and Eschliman recorded the hearings. Filing No. 6 at 11, 13. Other than that, Plaintiff's filings do not mention these defendants. While the Disciplinary Committee found Plaintiff guilty and imposed discipline, Plaintiff attended the hearing for the January 1, 2024, incident, and he does not allege that his right to defend himself with evidence or argument was denied. And as to the January 20, 2024, incident, Plaintiff was advised of the charges and refused to attend the hearing. Plaintiff does not accuse either Nieman or Eschliman of denying his right to a fair hearing.

Plaintiff's claims against Nieman and Eschliman, in their individual capacities, must be dismissed.

#### ii. Saxton, Bukovnik, and White

Saxton submitted the report alleging Plaintiff committed misconduct on January 20, 2024; Bukovnik accused Plaintiff of misconduct on February 1,

10

2024; and White submitted a misconduct report on March 6, 2024. For each misconduct report, Plaintiff was afforded the right to a hearing. A correctional officer's report of misconduct, standing alone, is sufficient to find a violation and impose discipline, if the violation is found by an impartial decisionmaker. *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). And an inmate has no protected liberty interest in remaining in or returning to the general prison population absent showing his housing restrictions are atypical and significant. *Wycoff v. Nichols*, 94 F.3d 1187, 1189 (8th Cir. 1996). Plaintiff has raised no such allegations.

Plaintiff's claims against Saxton, Bukovnik, and White, in their individual capacities, must be dismissed.

### iii. Unidentified Defendants

Plaintiff has alleged that due to housing restrictions, unnamed unit managers limited his passes to attend religious services and college classes. Even assuming Plaintiff had identified who was personally responsible, Plaintiff has not alleged how often his request to attend religious services was denied, for how long a time frame, or that he was also denied the ability to practice his religion within his cell. Without these allegations, he has failed to state a claim for denying his religious practices. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). And denial or termination of discretionary prison programs, such as college classes, does not result in either an atypical or a significant hardship in relation to the remainder of the prison population. *Persechini v. Callaway*, 651 F.3d 802, 807 (8th Cir. 2011); *Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir. 1992).

Plaintiff has alleged that unfounded misconduct reports and reports for very minor infractions caused him to lose three years of good time credit. Under Nebraska law, an inmate has a liberty interest in good time credits that were

earned and awarded, and the loss of these credits requires due process. *Liebers v. Clarke*, No. 03-cv-3322, 2005 WL 2347270, at *5 (D. Neb. Sept. 26, 2005). Here, Plaintiff is asking for damages for the loss of good time credits, not restoration of those credits. But even so, the claim nonetheless challenges his sentence and is therefore barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). *Portley-El v. Brill*, 288 F.3d 1063, 1067 (8th Cir. 2002) (holding a claim for damages due to discipline that included the loss of good time credits was *Heck*-barred). Under the "favorable termination rule," Plaintiff cannot pursue damages for the loss of good time credits as a result of discipline until he has successfully challenged that discipline through some other proceeding. *Id.* at 1066.

Plaintiff has failed to allege a claim to recover damages under § 1983 due to false reports or reports of minor misconduct, and such claims must be dismissed.

### 5. Taunting and Harassment

#### i. Classy

Classy allegedly laughed at Plaintiff when Plaintiff mentioned his brother had died. Plaintiff claims this conduct made him depressed, and he later attempted suicide. These allegations fail to state a claim under 42 U.S.C. § 1983. *Booker v. Anamosa State Penitentiary*, No. 22-cv-65, 2023 WL 2229002, at *5 (N.D. Iowa Feb. 24, 2023) (holding an inmate's allegations that defendants "made fun" of him fails to state a cognizable constitutional claim).

#### ii. Miller, Jensen, Coborn, and Cruz

Plaintiff claims Cruz limited his access to free time and showers, and along with Colburn and Jensen, harassed him, and withheld part of his meals, and Jensen and Miller harassed Plaintiff in the shower.

Verbal threats, taunting, name calling, and the use of offensive language by prison officials do not violate the constitution. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of an Eighth Amendment violation); *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) (obscene names and threats do not violate the Eighth Amendment).

Plaintiff claims Cruz, Colburn, and Jensen removed portions of his meals, but he does not allege being denied meals entirely, and he does not allege how often, over what period, and to what extent his meals were reduced. Without these allegations, Plaintiff has failed to allege that taking part of his meals rose to the level of an Eighth Amendment violation. *Roddy v. Nesbitt*, No. 99-4124, 2000 WL 1694061, at *1 (8th Cir. Nov. 14, 2000) (relying on *Berry v. Brady*, 192 F.3d 504, 506–08 (5th Cir. 1999)). And having failed to allege how and to what extent his free time and showers were limited, Plaintiff does not state a claim that limiting his shower access and free time was cruel and unusual punishment. *Wishon,* 978 F.2d at 448.

Plaintiff's complaint fails to state a claim against Cruz, Colburn, Jensen, and Miller, in their individual capacities.

### 6. Incident on January 1, 2024

#### i. Excessive Force

Plaintiff alleges that on January 1, 2024, he was subjected to the use of excessive force by Young, Stout, and Bowers. To state a claim for excessive force under the Eighth Amendment, Plaintiff must allege facts showing he was injured when the officers used force, and that force was excessive and applied maliciously and sadistically for the purpose of causing harm and not in a good

13

faith effort to achieve a legitimate penological purpose. *Peterson v. Heinen*, 89 F.4th 628, 635 (8th Cir. 2023).

Here, Plaintiff claims that although he was cooperating with the officers' commands, Young, Stout, and Bowers forcefully slammed him to the ground, grabbed his waist, bent his knees, and shackled his legs, and as a result, he sustained a concussion and other injuries. Considering these allegations true for the purpose of this initial review, Plaintiff has stated a claim against Young, Stout, and Bowers, in their individual capacities, for use of excessive force in violation of the Eighth Amendment.

### ii. Equal Protection

Plaintiff also claims his right to equal protection was violated, but he does not explain the basis for this claim. His allegation that the defendants "discriminate [against] Sudanese like myself," Filing No. 1 at 6, is too vague to support an equal protection claim.

Very liberally construed, Plaintiff alleges he was discriminated against during the altercation on January 1, 2024, when Young allegedly said, "I don't walk with you, you walk with me boy." Filing No. 1 at 4. The use of the word "boy" is not always evidence of discriminatory animus, but it may not be benign. The speaker's intended meaning depends on the circumstances, including context, inflection and tone of voice, local custom, and historical usage. *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006).

The Eighth Circuit has said that a "complaint clearly alleging that a correctional officer inflicted physical injury upon an inmate because of racial prejudice" would state an Equal Protection Claim. *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985). Plaintiff's claim could be more clear. But the Eighth Circuit has also held that a prisoner "had stated a claim that was entitled to be heard" when a prison guard combined a racial epithet with an

14

act of threatened violence. *See Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) (describing *Burton v. Livingston*, 791 F.2d 97 (8th Cir. 1986)).

Plaintiff's description of the January 1, 2024, incident combines allegations of physical assault with what could at least arguably be a racial epithet. That is, for the limited purposes of initial review, enough to plead that Young's participation in the incident was a violation of the Equal Protection Clause.

## IV. CONCLUSION

The Court is required to dismiss a complaint, or any portion of it, that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Plaintiff's complaint against all defendants in their official capacities and, except as to J. Young, Corporal Stout, and Dustin Bowers, against the defendants in their individual capacities must be dismissed.

Plaintiff's complaint adequately states an Eighth Amendment excessive force claim against J. Young, Corporal Stout, and Dustin Bowers, and an Equal Protection Claim against J. Young, in their individual capacities.

Accordingly,

IT IS ORDERED

1. Only Plaintiff's excessive force claim against J. Young, Corporal Stout, and Dustin Bowers, and Equal Protection claim against J. Young, in their individual capacities, may proceed.

2. Plaintiff's claims against all defendants in their official capacities and the individual capacity claims against all defendants other than J. Young, Corporal Stout, and Dustin Bowers are dismissed.

3. The Clerk of the Court is instructed to delete "Sandro" as a defendant.

4. The Clerk of Court is directed to terminate Taggart Boyd, Warden of RTC; Michele Wilholm, Warden of NSP; Case Manager Hassan, Case Manager of NSP; Housing Unit 3 Classy, Unit Manager of NSP; B. Nieman, Disciplinary Committee; Cpl. Eschliman, Disciplinary Committee; Saxton Alex, Cpl.; Richard White; Habtu, Sgt; Bukovnik; Al-Amiri, Corpal, NSP; RTC Cpl; Corporal Miller; Jensen; Coborn; and Cruz as defendants. The Clerk of Court is further directed to update the caption to reflect that "J. Young; Corporal Stout; and Dustin Bowers, in their individual capacities," are the only defendants.

5. For service of process on J. Young, Corporal Stout, and Dustin Bowers, in their individual capacities, the Clerk of Court is directed to complete two sets of summonses and USM-285 forms for each defendant. The service address for the first set of forms is:

> Office of the Nebraska Attorney General
> 2115 State Capitol
> Lincoln, NE 68509.

The service address for the second set of forms is:

> Nebraska State Penitentiary
> 4201 S 14th St.
> P.O. Box #22500
> Lincoln, NE 68542-2500.

6. The Clerk of the Court shall forward the summons forms and USM-285 forms together with copies of the Complaint, Filing No. 1, its supplements, Filing Nos. 4-8, and this Memorandum and Order to the United States Marshals Service.

7. The Marshals Service shall serve J. Young; Corporal Stout; and Dustin Bowers, in their individual capacities, by "leaving the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail or designated delivery service addressed to the office of the Attorney General." Neb. Rev. Stat. § 25-510.02(1) (prescribed method for serving the State of Nebraska or any state agency); *see also* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-511 ("Any employee of the state, as defined in section 81-8,210, sued in an individual capacity for an act or omission occurring in connection with duties performed on the state's behalf, regardless of whether the employee is also sued in an official capacity, must be served by serving the employee under section 25-508.01 and also by serving the state under section 25-510.02.").

8. The Marshals Service shall also separately serve J. Young, Corporal Stout, and Dustin Bowers, in their individual capacities, by certified mail or other authorized method of service at the Nebraska State Penitentiary address shown above. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (prescribed method for serving an individual).

9. For service by certified mail or designated delivery service, the Marshals Service shall serve Defendants within ten days of the Clerk of the Court issuing and forwarding the summons to the Marshals Service. *See* Neb. Rev. Stat. § 25-505.01(1).

10. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[5]

---

[5] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir.

17

11. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process on J. Young, Corporal Stout, and Dustin Bowers.

12. Plaintiff is hereby notified that failure to obtain service of process on J. Young, Corporal Stout, and Dustin Bowers within 90 days of the date of this order may result in dismissal of this matter without further notice. A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

13. The Clerk of Court is directed to set a pro se case management deadline in this case using the following text: **December 2, 2025**: service of process to be completed.

14. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 3rd day of September, 2025.

BY THE COURT:

*/s/ John M. Gerrard*

John M. Gerrard
Senior United States District Judge

---

1997) (language in § 1915(d) is compulsory). *See, e.g., Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).